EDITH H. JONES, Circuit Judge,
joined by EDITH BROWN CLEMENT, dissenting. • ■
I am pleased to join Judge Jolly’s dissent to the class certification approval in this case. The majority’s rules, as Judge Jolly’s dissent shows, afford far less scrutiny to class actions in cases involving mere allegations of “illegal pyramid schemes,” and are legally ill-founded. I wish to make two observations, lest the reader of the majority opinion believe that Stream Energy is already condemned for operating an illegal pyramid.scheme. Courts should not be in the business of writing one-sided opinions that lay a thumb on the scale simply.by ignoring proof that does not comport with their conclusions. Thus, a few facts, as opposed to suppositions and allegations, cast doubt on the ease with which the majority condemns Stream’s marketing method as illegal.
First, Stream Energy has existed in Texas for more -than a decade and has become the fourth largest retail gas and electrical energy provider in this state. Stream is also authorized to sell energy in a half dozen additional jurisdictions. Stream serves over a million Texas customers, in part because it offers energy at competitive prices. Stream characterizes its marketing subsidiary Ignite’s business as multilevel marketing, the bare bones of which are sketched in the majority and dissenting opinions. Whatever else may be the case, however, Stream sells a lot of real product to real people at favorable prices and its marketing model has yet to collapse.
Second, the majority never defines an “illegal pyramid scheme.” The majority cites two elements described by the FTC over forty years ago: it is characterized by payments by participants in exchange for “(1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to the sale of the product to ultimate users.” In re Kos-cot Interplanetary, Inc., 86 F.T.C. 1106 (1975). But the FTC has refused more rigorously to define an illegal pyramid scheme, and the majority opinion admits that “[n]o clear line separates illegal pyramid schemes from legitimate multilevel marketing programs.” (citation omitted). Indeed, there are dozens of legitimate, longstanding multilevel marketing companies in the United.States (e.g., Avon, Mary Eay Cosmetics, Amway, and Tupperware). The majority thus leaves it to the unfettered and untutored discretion of the dis *654 trict court and' jury to decide whether Ignite is an “illegal pyramid scheme.”'I do not ever recall sending a case to a jury with so little definition of the elements of the offense, much less, for class action purposes, assuming guilt from the enterprise’s mere structure, allowing an inference of class-wide reliance and requiring no proof of individual causation.
If this isn’t stacking the deck legally, I don’t know what is. But I surmise that even plaintiffs’ counsel do not really believe Stream runs an “illegal pyramid marketing scheme.” Had they truly believed this, they could have invoked the Department of Justice or FTC to assist in shutting Stream down. Instead, they claim to be suing to recover about $329 apiece for over 200,000 IAs who, they-assert, lost money on their “investments” with Stream. This amount, nearly $60 million, would be trebled pursuant to RICO, exposing Stream to over $190 million in potential damages, plus contingent attorneys’ fees. Since this is far more than Stream is worth, however, the plaintiffs’ attorneys must either want to take over the business themselves or simply strong-arm a settlement, leaving the “illegal pyramid scheme” in place until it pays off.
This, I suggest, is the price of lowering the standards for liability and stripping businesses of the ability’ to know in advance what the law commands. Reckless allegations of undefined illegality, coupled with immense uncertainty as to outcomes, are an affront to the rule of law.